IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD HALBROOKE,                )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )    Civil Action No. 05-832
                                 )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
          Defendant.             )

O R D E R

AND NOW, this 28th day of September, 2006, upon consideration of Defendant's Motion for Summary Judgment (document No. 12) filed in the above-captioned matter on October 21, 2005,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 10) filed in the above-captioned matter on September 29, 2005,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

I.      **Background**

On August 21, 2003, Plaintiff, Ronald Halbrooke, filed his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  (R. 44-46, 168-69).  Specifically, Plaintiff claimed that he became disabled on April 30, 2002, due to chronic neck pain, chronic low back pain, loss of curvature, and protruding spinal discs.  (R. 44, 59).[1]

After being denied initially, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ").  (R. 30, 36).  In a decision dated January 27, 2005, the ALJ denied Plaintiff's request for benefits.  (R. 13-23).  The Appeals Council declined to review the ALJ's decision on April 15, 2005.  (R. 4-6).  On June 22, 2005, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.     **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the

---

[1]     Although Plaintiff also claimed that he was disabled because of depression, Plaintiff, in his brief in support of his present Motion, conceded that the Administrative Law Judge's findings with respect to his mental health impairments are supported by substantial evidence. As such, the Court will not, in this Order, address those alleged impairments.

2

record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citations omitted). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (citations omitted). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for

a statutory twelve-month period. Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001)(internal quotation marks and citations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy... .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 920.921(a). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner

4

must proceed to step three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(f). In making this determination, the ALJ should consider the claimant's residual functional capacity, his age, education, and past work experience. Id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III.     The ALJ's Decision

In the present case, the ALJ applied the sequential evaluation process when reviewing Plaintiff's claim for benefits.

In particular, the ALJ found that, although Plaintiff had worked after the date of the alleged onset of disability, earning $2,425.00 in 2003, his earnings fell below the monetary level of $800.00 per month for 2003, and that, therefore, he had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 14). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had several severe impairments, specifically, chronic neck pain, chronic low back pain, and atypical left lumbosacral radiculopathy,[2] but concluded that his impairments, either singly or in combination, did not meet any of the listings that would satisfy step three. (R. 16-17).[3]

Plaintiff established that he is incapable of returning to his past employment; therefore, the ALJ moved on to step five. (R. 20). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work as defined in 20 C.F.R. §§ 404.1567 and 416.967. Specifically, he found that Plaintiff could only occasionally climb stairs, ramps, ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl and that he is limited to simple, routine work. (R. 19-20). The ALJ used a vocational expert ("VE") to

---

[2]  The ALJ also found Plaintiff's depression to be a severe impairment, but, as noted above, Plaintiff is not challenging the ALJ's findings regarding his mental health impairments.

[3]  The ALJ considered listings 1.04 and 12.04 in making this determination.

determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. According to the ALJ, the VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs, including mechanical assembler, tool repairer, and welder, that exist in significant numbers in the national economy. (R. 21). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 21).

IV.     **Legal Analysis**

In the present case, Plaintiff alleges that the ALJ erred when he failed to give proper weight to the medical opinion of Plaintiff's treating physician, Dr. Kuk S. Lee, a physiatrist who was also a consultative examiner in this case. Specifically, Plaintiff contends that the ALJ improperly failed to give greater weight to Dr. Lee's opinion that Plaintiff would be unable to work and regarding the nature and severity of his impairments. Because the Court believes that the record is unclear as to whether proper weight was given to the treating physician's opinion in this case, it will remand the case for further consideration.

As the Third Circuit has specifically recognized, when assessing a plaintiff's application for benefits, the opinion of the plaintiff's treating physician is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing 20 C.F.R. §

404.1527). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the Commissioner may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Plummer, 186 F.3d at 429.

The opinions of treating physicians are given greater deference because these doctors are "employed to cure and ha[ve] a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). This is especially true "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). In fact, the applicable regulations acknowledge the special ability of a treating physician when assessing a plaintiff's condition and provide as follows:

> [treating physicians] are likely to be
> the medical professionals most able to

>                    provide a detailed, longitudinal picture
>                    of [the plaintiff's] medical
>                    impairment(s) and may bring a unique
>                    perspective to the medical evidence that
>                    cannot be obtained from objective medical
>                    findings alone or from reports of
>                    individual examinations, such as
>                    consultative examinations or brief
>                    hospitalizations.

20 C.F.R. § 416.927(d)(2).

In short, an ALJ may not reject a treating physician's opinion based on his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F. 3d at 429. Rather, the ALJ must provide specific and legitimate reasons for doing so. Fargnoli, 247 F.3d at 43.

This case is unique in that the treating physician at issue was also the state consultative examiner. In his role as consultative examiner, Dr. Lee, on November 17, 2003, assessed that Plaintiff suffered from chronic neck pain and stiffness from chronic residual of cervical sprain/strain and from chronic low back pain and atypical left lumbosacral radiculitis with abnormal radiologic finding stemming from a motor vehicle accident on March 26, 2002. He opined that Plaintiff was capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking about 3-4 hours in an 8-hour workday, sitting for a total of about 3-4 hours in an 8-hour workday, unlimited pushing and/or pulling, and occasional bending, kneeling,

stooping, crouching, balancing, and climbing. He found no other physical or environmental limitations. (R. 117-24).

However, approximately two weeks before his consultative examination with Dr. Lee, Plaintiff had begun treating with Dr. Lee for his neck and back conditions. (R. 197). Accordingly, Dr. Lee continued to treat Plaintiff after November of 2003. In fact, the treatment notes in the record document monthly treatment from February 2004 through March 2005. (R. 133-43, 175-78). On August 13, 2004, in the midst of this treatment, Dr. Lee assessed that Plaintiff had suffered an unexpected setback for chronic atypical L-S radiculitis and sacroilitis. (R. 142).

A little over a month later, on September 27, 2004, Dr. Lee offered a second opinion as to Plaintiff's limitations. He opined that Plaintiff was capable of occasionally lifting 10 pounds, standing and/or walking about 3 hours in an 8-hour workday, and sitting for a total of about 3 hours in an 8-hour workday. He further found that Plaintiff could not use his feet for repetitive movements. He continued to maintain that Plaintiff had no limitations on pushing and/or pulling, and that he could occasionally bend, squat, crawl, and climb. He further stated that Plaintiff's condition rendered him unable to work. (R. 146-48).

The ALJ, finding that Dr. Lee's September 27, 2004 opinion assessed Plaintiff with an RFC of less than sedentary work, did not afford any significant weight to the opinion, despite the fact that

Dr. Lee was Plaintiff's treating physician. He supported this determination by asserting that the opinion conflicted with the substantial evidence of record documenting less severe limitations. He stated:

> The doctor did not adequately consider the entire record, including the statements of collateral sources, including the objective findings of other treating physicians. The objective evidence in the record does not support the level of severity that this doctor assigns.

(R. 18).

The ALJ did, however, assign significant weight to Dr. Lee's consultative opinion of November 17, 2003, as well as to the Physical Residual Functional Capacity Assessment dated December 10, 2003, by Michael Niemiec, D.O.[4] He found that the consultants' opinions were well-supported by the medical evidence, including Plaintiff's medical history and clinical and objective signs and findings, as well as detailed treatment notes, which provided a reasonable basis for Plaintiff's chronic symptoms and resulting limitations. He also found that their opinions were not inconsistent with the other substantial evidence of record. (R. 18-19).

---

[4] Dr. Niemiec's opinion was essentially the same as Dr. Lee's November 17 opinion except that he opined that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday and sit for a total of about 6 hours in an 8-hour workday.

11

The ALJ's cursory discussion of Dr. Lee's opinion provided in his role as Plaintiff's treating physician is inadequate to determine whether he gave the opinion the proper evidentiary weight. Although he states that Dr. Lee's September 27, 2004 opinion "did not adequately consider the entire record, including the statements of collateral sources, including the objective findings of other treating physicians," he does not provide any basis for believing that Dr. Lee did not consider Plaintiff's entire medical record in formulating his September 27, 2004 opinion, nor does he indicate how or why these other sources conflicted with this opinion. While there are, in the record, findings from other treating physicians, particularly from Dr. R. W. Beissell (R. 97-103) and from the Uniontown Hospital (R. 104-116), the ALJ does not provide any analysis as to why these findings would be inconsistent with Dr. Lee's September 27 opinion as Plaintiff's treating physician. In fact, in determining the weight to be given Dr. Lee's opinion as Plaintiff's treating physician, the ALJ does not even directly refer to those records.

Instead, he proceeds to discuss the consultants' opinions. To be sure, Dr. Lee's September 27, 2004 opinion is not fully consistent with his own November 17, 2003 opinion. However, the ALJ fails to fully discuss the fact that Dr. Lee had provided these opinions almost a year apart. Significantly, in August of 2004, after the November 17 opinion but before the September 27 opinion,

Dr. Lee assessed that Plaintiff had suffered an unexpected setback for chronic atypical L-S radiculitis and sacroilitis. (R. 142). The ALJ fails to discuss whether this or any other intervening diagnosis could have accounted for Dr. Lee's apparent change of opinion. Considering the fact that Dr. Lee rendered both opinions makes it particularly important for the ALJ to properly discuss any apparent inconsistencies, as Dr. Lee presumably was aware of the November 17 opinion when rendering his second opinion.

The RFC assessment of Dr. Niemiec, a non-treating, non-examining medical consultant, from December 2003 is also inconsistent with Dr. Lee's September 27, 2004 opinion. However, again, the ALJ failed to discuss the fact that this assessment predated the September 27 report by more than nine months and that it was compiled without the benefit of Dr. Lee's treatment notes pertaining to Plaintiff from 2004 on. It is true that where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit," but he "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429). See also Dula v. Barnhardt, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). However, it is not clear from the ALJ's decision as to whether he credited Dr. Niemiec over Dr. Lee for the proper reasons, especially considering the fact that

Dr. Niemiec's assessment was made without the full record and substantially earlier than Dr. Lee's September 27, 2004 opinion.[5]

The confusion is increased by the fact that the ALJ assigned significant weight to both Dr. Niemiec's opinion and Dr. Lee's November 17 opinion, but failed to address the significant difference between these two opinions – the amount of time Plaintiff can stand/walk and sit during an 8-hour day.[6] He does not, in setting forth Plaintiff's RFC in the decision, indicate that Plaintiff requires a sit/stand option, but the sit/stand option does appear in the hypothetical he provided to the VE. In any event, the ALJ did not specify the frequency with which Plaintiff must alternate between sitting and standing.[7]

---

[5] The Court emphasizes that, although the ALJ can credit Dr. Niemiec's opinion, he can only give this opinion weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by Dr. Niemiec. SSR 96-6p, 1996 WL 374180 (S.S.A.), at *2 (July 2, 1996). In general, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him." Morales, 225 F.3d at 320.

[6] Indeed, Dr. Niemiec addressed Dr. Lee's opinion regarding the Plaintiff's ability to stand/walk and sit in his assessment, finding Dr. Lee's opinion to be inconsistent with his own examination of Plaintiff. (R. 131).

[7] "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185 (S.S.A.), at *7 (July 2, 1996). See also Castrejon v. Apfel, 131 F. Supp. 2d 1053 (E.D. Wis. 2001); SSR 83-12, 1983 WL 31253 (S.S.A.), at *4 (1983) (discussing the need to consult a VE regarding the effects of a claimant's need to alternate between sitting and standing in regard to both light and sedentary work).

In short, the record simply does not permit the Court to determine whether the ALJ's decision to afford no significant weight to Plaintiff's treating physician is supported by substantial evidence. Accordingly, the Court will remand for the ALJ to re-evaluate Plaintiff's non-mental impairments. On remand, the ALJ should appropriately weigh the medical evidence of record and fully develop his reasons for affording the weight given to such evidence.[8]

Although not raised by the parties, the Court further notes that there is some confusion as to Plaintiff's RFC and the VE's testimony. The ALJ asserts that the VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs, including mechanical assembler, tool repairer, and welder, that exist in significant numbers in the national economy. (R. 21). However, this does not appear to be accurate. The VE did not testify that Plaintiff, based on his age, education, past relevant work experience, and RFC can perform the job of mechanical assembler, tool repairer, and light welder. Rather, he testified that Plaintiff's ability to use hand tools, power tools, understand how machines work, and weld would be transferrable to those jobs. He did not consider Plaintiff's RFC in

---

[8] Since the Court is remanding this case based on Plaintiff's argument regarding the weight given to the treating physician's opinion, it does not reach Plaintiff's argument that the case should be remanded based on the ALJ's findings regarding Plaintiff's daily activities.

discussing those jobs and did not determine whether Plaintiff could actually perform those jobs. (R. 205-06).

While the VE did testify, based on a hypothetical offered by the ALJ, that Plaintiff could perform the job of inspector/checker of small products, assembler of small products, laundry folder, and hand packer, the hypothetical did not include Plaintiff's postural limitations (i.e., his limitations as to climbing, bending, etc.). Moreover, the hypothetical did include a sit/stand option, not found in the ALJ's findings regarding Plaintiff's RFC in his decision. (R. 206-07). This confusion as to Plaintiff's RFC and the VE's testimony further supports a remand in this case.

V.      **Conclusion**

The Court finds that substantial evidence does not support the ALJ's decision in this case. Accordingly, the Court will remand for the ALJ to re-evaluate Plaintiff's non-mental impairments. In particular, the ALJ should reconsider the weight to be given to the medical evidence of record and more fully develop his reasons for affording that weight. Moreover, the ALJ should clarify Plaintiff's RFC and re-evaluate whether there are jobs in the national economy that Plaintiff can perform based on his RFC.

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record